UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRENT TAYLOR,

    Plaintiff,

    v.                                    CAUSE NO. 3:21-CV-852-RLM-MGG

ROBERT CARTER, et al.,

    Defendants.

OPINION AND ORDER

Brent Taylor, a prisoner without a lawyer, filed a complaint, blaming an allegedly dysfunctional grievance system for a several-month delay in receiving glasses at Indiana State Prison. The court determined that the complaint didn't establish that any of the high-level officials he sent letters and complaints to about his problem had the personal involvement in his medical care necessary to hold them liable under 42 U.S.C. § 1983. The court gave him a chance the opportunity to file an amended complaint, and he has done so. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Taylor alleges that around July 1, 2021, he received an eye exam from optometrist Dr. Hobbs to obtain a prescription for glasses. He says that he told Dr. Hobbs that he needed a pair of glasses because he was on his last pair of contacts and those were set to expire in two weeks. Dr. Hobbs conducted an eye exam and said he would order the glasses. He estimated that it would take 2-3 weeks for them to arrive.

The glasses didn't arrive in three weeks. Mr. Taylor alleges that his prescription is so strong that he is legally blind without glasses. Mr. Taylor alleges that he would run into walls and experienced headaches from straining to see when he tried to go without his contacts. Therefore, Mr. Taylor continued to wear his expired contacts, which he said led to an eye infection. His eyes became red and swollen and leaked discharge. He described the pain as excruciating.

Mr. Taylor alleges that he sent a medical request to Dr. Hobbs around August 1, 2021, detailing his eye infection and need for glasses. After three days with no response, he sent Dr. Hobbs another medical request detailing that his problems were becoming more urgent, but that request, too, received no response. While investigating the status of his complaints, he says a nurse told him that the complaints were in the system and it appeared that Dr. Hobbs had received the requests. The nurse explained that there was a backlog of medical requests because the old medical contractor, Wexford Health, had ignored several pending request forms during the transition to the new healthcare provider.

After several more days with no response to his requests, Mr. Taylor alleges he spoke to Nurse Jane Doe who handles medical grievances for the Indiana State

2

Prison. The nurse saw in the computer that Dr. Hobbs knew of the situation and said the doctor would schedule him when the doctor saw fit. Mr. Taylor says he showed the nurse his eye and told her it was an emergency and hoped that she could call someone to see him. Mr. Taylor reports that she said no and told him that he had already submitted too many requests. She said his requests would no longer be answered because the doctor was aware of the situation.

When Mr. Taylor filed his first complaint, four months had passed since he had been examined by the optometrist in July 2021 and he still hadn't received his glasses or been treated for the eye infection. Mr. Taylor's amended complaint, filed in April 2022, doesn't say whether he still suffers from an eye infection or lacks glasses. The court assumes, then, that the eye infection cleared up and he received his glasses at some point after November 2021.

Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The need for glasses can constitute a serious medical need under the Eighth Amendment, depending on the consequences of going without glasses. *Compare* Alexander v. Richter, 756 F. App'x 611, 614 (7th Cir. 2018) (noting the need for prescription glasses could be a serious need if an inmate needed them to avoid double vision and the loss of depth perception), *with* Conway v. Wexford Health Servs., No. 3:17-CV-110, 2020 WL

3

1433830, at *4-5 (S.D. Ill. Mar. 24, 2020) (collecting cases and concluding inmate did not have serious medical need for glasses because his prescription required only a mild correction and the lack of glasses, while inconvenient, did not significantly impair his daily living). Mr. Taylor has established that his need for glasses could be a serious medical need, but he hasn't.established that any defendant was deliberately indifferent to that need. He was seen promptly for the initial eye exam to determine his prescription for eyeglasses, and the glasses were ordered. Any delays in filling the glasses prescription are unfortunate, but not attributable to any defendant here. *See* Donald v. Wexford Health Sources, Inc., 982 F.3d 451, 460 (7th Cir. 2020) (concluding prison doctor could not be held liable for delay in receiving contact lenses because the record showed that an off-site eye surgeon's office was responsible for the delay); Franklin v. McCaughtry, 110 F. App'x 715, 719–20 (7th Cir. 2004) (holding doctor could not be liable for inmate's failure to receive diabetic diet because the doctor prescribed the diet but "after [the doctor] wrote the prescription his responsibility on the matter ended because the task of completing a 'modified diet form' at WCI belongs to the nurse implementing a physician's orders, not the physician"); Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (doctor not liable for delay between initial visit, diagnosis, and visit to specialist because the delay was not in his control).

Mr. Taylor's eye infection is different from his need for glasses. Mr. Taylor has plausibly alleged that the failure to treat his eye infection could be considered deliberate indifference. Mr. Taylor describes the pain from the infection as "excruciating" and says his eyes were red, swollen, and leaked discharge. Mr. Taylor

4

doesn't allege any lasting effects from the eye infection, but delay in treating the pain can constitute deliberate indifference. *See* Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 242 (7th Cir. 2021) (noting that a delay in treatment can violate the Eighth Amendment if "the delay exacerbated the injury or unnecessarily prolonged pain" (quotation marks omitted)). Giving Mr. Taylor the inferences to which he is entitled at the screening stage, he states a claim against Dr. Hobbs for disregarding Mr. Taylor's complaints about the eye infection.

My. Taylor alleges a nurse, identified only as Nurse Jane Doe, also denied him treatment for his eye infection. Mr. Taylor can't proceed against Nurse Doe because a case can't proceed against unnamed defendants. *See* Wudtke v. Davel, 128 F.3d 1057, 1060 (7th Cir. 1997) ("[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff."). Nurse Jane Doe will be dismissed.

Mr. Taylor sues several high-level officials, seeking to hold them responsible for not remedying his problem after he wrote them letters and grievances about it. He seeks to hold Robert Carter, the Commissioner of the Indiana Department of Correction liable based on certified letters he sent the commissioner outlining his eye issues. This is insufficient for individual liability. Liability under 42 U.S.C. § 1983 is based on personal responsibility, and a defendant "cannot be hit with damages under §1983 for not being ombudsmen." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). A prisoner can't simply "write letters to the Governor of Wisconsin and 999

5

other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign" is unsuccessful. *Id*. The commissioner can't be expected to investigate a single prisoner's medical complaint of this type.

Mr. Taylor also sues Indiana State Prison Warden Ron Neal and Deputy Warden Dawn Buss. Neither had direct involvement with Mr. Taylor's medical care, but he alleges he sent them letters about his eye infection and need for glasses. Supervisory staff can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Doe v. Purdue Univ., 928 F.3d 652, 664 (7th Cir 2019). As nonmedical staff, the warden and assistant warden are entitled to rely on medical staff's judgment regarding whether medical care is being appropriately provided. Burks v. Raemisch, 555 F.3d at 595; *see also* Miranda v. Cnty. of Lake, 900 F.3d 335, 343 (7th Cir. 2018) ("When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention."). Nevertheless, if nonmedical staff are aware of an excessive risk to Mr. Taylor's safety, they can be held liable for doing nothing. *See* Franklin v. McCaughtry, 110 F. App'x at 721 ("The news that what Franklin thought was a fingernail infection was not receiving sufficient attention would not have reasonably suggested to McCaughtry and Wegner an excessive risk to Franklin's safety."). Mr. Taylor's letters establish that medical staff were aware of his issues and that he disagreed with their assessment of the need for immediate

6

treatment. These letters don't allow a reasonable inference that the warden and assistant warden were aware of an excessive risk to Mr. Taylor's safety such that they needed to intervene in the medical professionals' assessment about Mr. Taylor's treatment needs.

Mr. Taylor also asserts a retaliation claim against the assistant warden. He alleges that she threatened to kick him out of his personal development class if he continued to complain about his medical issues. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). Although it is undisputed that "[a] prisoner has a First Amendment right to make grievances about conditions of confinement," Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir. 2010), frivolous grievances are not protected, *see* Hale v. Scott, 371 F.3d 917, 919 (7th Cir. 2004); Harris v. Walls, 604 F. App'x 518, 521 (7th Cir. 2015). Repeated complaints about the same issue are frivolous and not protected.

Finally, Mr. Taylor sues Wexford Health Services and Centurion Health, the former and current companies contracted to provide medical care in the prison. By the time Mr. Taylor was seen on July 1, 2021, Centurion was the medical provider at the prison. *See* Baldwin v. Westville Corr. Facility, No. 3:21-CV-682-DRL-MGG, 2021 WL 5759136, at *2 n.1 (N.D. Ind. Dec. 3, 2021) (Wexford's contract with Indiana

7

Department of Correction terminated on July 1, 2021, and it was replaced by Centurion.). Mr. Taylor alleges that as Wexford was transitioning out, the company failed to process medical requests so that when Centurion took over, there was a backlog that prevented Mr. Taylor from being seen promptly for his eye infection. These companies could be held liable for constitutional violations during the time they provided medical care at Indiana prisons. *See* Hildreth v. Butler, 960 F.3d 420, 422 (7th Cir. 2020). A private company performing a public function can be held liable if its own policies caused the alleged constitutional violation. *See* Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); Rice v. Corr. Med. Servs., 675 F.3d 650, 675 (7th Cir. 2012). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 654 (7th Cir. 2021). Hiccups and delays are not surprising in a transition to a new medical provider. The complaint establishes that Mr. Taylor was promptly given an eye exam and glasses were ordered. These temporary delays due to transition backlogs are not of constitutional magnitude. Further, the delay in being seen for his eye infection can't be attributed to a policy or practice of either company. Instead, medical staff made an independent decision that Mr. Taylor could wait his turn while they worked through the backlog of medical requests.

For these reasons, the court:

(1) GRANTS Brent Taylor leave to proceed against Dr. Hobbs in his individual capacity for compensatory and punitive damages for delaying treatment of Mr. Taylor's painful eye infection, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Robert Carter, Ron Neal, Buss, Centurion Health, Wexford Health Services, and Jane Doe;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Hobbs at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 17);

(7) ORDERS Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of the defendant if he does not waive service and if it has such information; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Dr. Hobbs to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 26, 2022

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT