UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRENT TAYLOR,

    Plaintiff,

        v.                       CAUSE NO. 3:21-CV-852-RLM-MGG

ROBERT CARTER, et al.,

    Defendants.

OPINION AND ORDER

Brent Taylor, a prisoner without a lawyer, was granted leave to proceed against the optometrist at Indiana State Prison on a claim relating to his eye care. When the optometrist couldn't be identified to be served, Mr. Taylor was ordered to provide the court with more information about him. In response, Mr. Taylor filed an amended complaint, changing the optometrist's name from Dr. Hobbs to Dr. Lewton. Now the amended complaint, as supplemented by an additional exhibit Mr. Taylor filed, is ready to be screened. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Taylor alleges that around July 1, 2021, he received an eye exam from optometrist Dr. Lewton to obtain a prescription for glasses. He says that he told Dr. Lewton that he needed a pair of glasses because he was on his last pair of contacts and those were set to expire in two weeks. Dr. Lewton conducted an eye exam and said he would order the glasses. He estimated that it would take 2-3 weeks for them to arrive.

The glasses didn't arrive in three weeks. Mr. Taylor alleges that he is legally blind without glasses. When he tried to go without his contacts, Mr. Taylor alleges that he would run into walls and experienced headaches from straining to see. So Mr. Taylor continued to wear his expired contacts, which led to an eye infection. His eyes became red, swollen, and leaked discharge. He described the pain as excruciating.

Mr. Taylor alleges that he sent a medical request to Dr. Lewton around August 1, 2021, detailing his eye infection and need for glasses. After three days with no response, Mr. Taylor says he sent Dr. Lewton another medical request stating that his problems were becoming more urgent, but that request also received no response. He says a nurse told him that the complaints were in the system and it appeared that Dr. Lewton had received the requests. The nurse, however, explained that there was a backlog of medical requests because the old medical contractor, Wexford Health, had ignored several pending request forms during the transition to the new healthcare provider.

After several more days without response to his requests, Mr. Taylor spoke to Nurse Jane Doe who handles medical grievances for the Indiana State Prison. The

2

nurse saw in the computer that Dr. Lewton was aware of the situation and said the doctor would schedule him when he saw fit. He says he showed the nurse his eye and told her that it was an emergency and that he hoped she could call someone to see him. Mr. Taylor reports that she said no and told him that he had already submitted too many requests. She relayed that his requests would no longer be answered because the doctor was aware of the situation.

Mr. Taylor filed a grievance at the end of August 2021 about his need for glasses, among other things. The grievance processor's belated response noted that the glasses had been ordered on August 2, 2021, a month after the eye exam. Because those never arrived, a new order was placed on November 9, 2021. Mr. Taylor received those glasses, though he doesn't say when. He doesn't allege that he still suffers from an eye infection or that lasting damage occurred from the delay in treatment.

Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The need for glasses can constitute a serious medical need under the Eighth Amendment, depending on the consequences of going without glasses. *Compare* Alexander v. Richter, 756 F. App'x 611, 614 (7th Cir. 2018) (noting the need for prescription glasses could be a serious need if an inmate needed them to avoid double vision and the loss of depth perception), *with* Conway v. Wexford Health Servs., No. 3:17-CV-110, 2020 WL

3

1433830, at *4-5 (S.D. Ill. Mar. 24, 2020) (collecting cases and concluding inmate did not have serious medical need for glasses because his prescription required only a mild correction and the lack of glasses, while inconvenient, did not significantly impair his daily living).

Mr. Taylor's need for glasses could be a serious medical need, and the one-month delay in placing the order could constitute deliberate indifference. Bit doesn't appear that the doctor could be held responsible for any off-site processing delays once the order was placed. *See* Donald v. Wexford Health Sources, Inc., 982 F.3d 451, 460 (7th Cir. 2020) (concluding prison doctor could not be held liable for delay in receiving contact lenses because the record showed that an off-site eye surgeon's office was responsible for the delay). Mr. Taylor can proceed against Dr. Lewton on the Eighth Amendment claim for the one-month delay in initially ordering his glasses.

Mr. Taylor also has plausibly alleged that Dr. Lewton's failure to treat his eye infection could be considered deliberate indifference. Mr. Taylor describes the pain from the infection as "excruciating" and says his eyes were red, swollen, and leaked discharge. Mr. Taylor doesn't allege any lasting effects from the eye infection, but delay in treating the pain can constitute deliberate indifference. *See* Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 242 (7th Cir. 2021) (noting that a delay in treatment can violate the Eighth Amendment if "the delay exacerbated the injury or unnecessarily prolonged pain" (quotation marks omitted)). Giving Mr. Taylor the inferences to which he is entitled at the screening stage, he states a claim against Dr. Lewton for disregarding his complaints about the eye infection.

4

Mr. Taylor can't proceed against Nurse Jane Doe, to whom he says he spoke on August 21, 2021, about his medical needs. Mr. Taylor says she handles medical grievances. It's unclear whether this job encompasses the authority to schedule appointments without the doctor's permission. *See* Perez v. Fenoglio, 792 F.3d 768, 779-80 (7th Cir. 2015) (discussing limitations on nurse's liability when prisoner is also under the care of a doctor). Even if it did, the complaint doesn't provide enough information for the court to order service on her. Because this case will otherwise proceed, Nurse Jane Doe will be dismissed without prejudice.[1] *See* Rodriguez v. McCloughen, -- F.4th --, No. 22-1259, 2022 WL 4494294, at *1 (7th Cir. Sept. 28, 2022) (noting that placeholder defendants may be permissible while plaintiffs use discovery to learn proper names); Wudtke v. Davel, 128 F.3d 1057, 1060 (7th Cir. 1997) ("[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff.").

Mr. Taylor akso sues several high-level officials, seeking to hold them responsible for not remedying his problem after he wrote them letters and grievances. To allow a claim to go forward against a supervisory official based only on letters and a failure to intervene, the plaintiff "has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official

---

[1] If Mr. Taylor believes he can state a claim against Nurse Jane Doe, he can file an amended complaint after conducting discovery to learn more details about her role in providing medical care at the prison and to learn more identifying information about her. He is cautioned, however, to be mindful of the two-year statute of limitations that applies to his claims. *See* Rodriguez v. McCloughen, 2022 WL 4494294, at *1.

sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). *Compare* Franklin v. McCaughtry, 110 F. App'x 715, 721 (7th Cir. 2004) ("The news that what Franklin thought was a fingernail infection was not receiving sufficient attention would not have reasonably suggested to McCaughtry and Wegner an excessive risk to Franklin's safety."), *with* Perez v. Fenoglio, 792 F.3d 768, 782 (7th Cir. 2015) (claim allowed to go forward against supervisory officials because prisoner's "coherent and highly detailed grievances and other correspondences" gave officials actual knowledge of medical situation, which included an untreated open, bleeding hand wound and prison medical staff's failure to follow outside specialist's instructions, resulting in irreparable damage).

Moreover, an official's role in the system affects their liability when faced with written complaints from inmates. A defendant "cannot be hit with damages under §1983 for not being ombudsmen." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). High-level officials cannot be expected to respond to "clearly localized, non-systemic violations." Antonelli v. Sheahan, 81 F.3d 1422, 1429 (7th Cir. 1996) (dismissing claims against sheriff and director of Department of Corrections because they involved "clearly localized" issues). A high-level official can't "realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature." *Id.* at 1428-29. An additional layer of deference is present here; nonmedical staff may typically rely on medical staff's judgment regarding whether medical care is being appropriately provided. Burks v.

6

Raemisch, 555 F.3d at 595; *see also* Miranda v. Cnty. of Lake, 900 F.3d 335, 343 (7th Cir. 2018) ("When detainees are under the care of medical experts, nonmedical jail staff may generally trust the professionals to provide appropriate medical attention.").

Mr. Taylor's attempt to broaden his claims beyond just his situation to encompass systemic problems at the prison are unavailing. He alleges generally that he was told "other inmates were having the same issues" with a delay in being seen, ECF 45 at 9, and he asserts "several fellow inmates were experiencing similar issues," *id.* at 11. But this is not enough to plausibly allege a systemic problem. "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011). "The required level of factual specificity rises with the complexity of the claim." *Id.* at 616-617. Mr. Taylor doesn't identify any other prisoner who faced similar problems, so his general allegations of widespread issues need not be accepted as true.

With this in mind, the complaint doesn't state a claim on which relief can be granted against Robert Carter, the Commissioner of the Indiana Department of Correction. The Commissioner can't be expected to investigate a single prisoner's medical complaint of this type. The same is true of Ron Neal, the Warden of Indiana State Prison. As the head of the prison, Warden Neal could be expected to intervene in some types of medical issues a prisoner may have, but Mr. Taylor's allegations couldn't be said to be "of the gravest nature." Antonelli, 81 F.3d at 1428-29.

7

Deputy Warden Dawn Buss presents a closer question because the complaint more directly alleges her particular awareness of Mr. Taylor's issues. But her role at the prison, and thus her responsibility to act, isn't clear. Mr. Taylor says that she is the "acting deputy superintendent," ECF 45 at 6, which suggests that she might have some responsibility for actively managing day-to-day matters of the prison. But he doesn't say what specific duties she had as a "deputy superintendent," and later alleges that she "runs the law library," ECF 45 at 7, suggesting that her role at the prison doesn't encompass responding to inmate complaints. A prisoner can't simply "write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign" is unsuccessful. Burks v. Raemisch, 555 F.3d at 595.

Mr. Taylor does, however, plausibly allege that Deputy Warden Buss retaliated against him for sending her correspondence about his medical issues. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). Mr. Taylor alleges that after he sent Deputy Warden Buss that letter, she threatened to kick him out of his personal

8

development class—his only source of income—if he continued to complain about his medical issues. He also alleges that she began to restrict his time at the law library. Giving Mr. Taylor the inferences to which he is entitled at the screening stage, he plausibly alleges that he engaged in protected First Amendment activity by writing Deputy Buss a letter complaining about prison conditions and that because of that letter, Deputy Buss restricted his law library time and threatened to remove his source of income, which could plausibly deter future protected activity. Mr. Taylor can proceed against Deputy Buss on a First Amendment claim.

Finally, Mr. Taylor sues Wexford Health Services and Centurion Health, the former and current companies contracted to provide medical care in the prison. By the time Mr. Taylor was seen on July 1, 2021, Centurion was the medical provider at the prison. *See* Baldwin v. Westville Corr. Facility, No. 3:21-CV-682-DRL-MGG, 2021 WL 5759136, at *2 n.1 (N.D. Ind. Dec. 3, 2021) (Wexford's contract with Indiana Department of Correction terminated on July 1, 2021, and it was replaced by Centurion.). Mr. Taylor alleges that as Wexford was transitioning out, the company failed to process medical requests so that when Centurion took over, there was a backlog that prevented Mr. Taylor from being seen promptly for his eye infection.

These companies could be held liable for constitutional violations during the time they provided medical care at Indiana prisons. *See* Hildreth v. Butler, 960 F.3d 420, 422 (7th Cir. 2020). A private company performing a public function can be held liable if its own policies caused the alleged constitutional violation. *See* Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); Rice v. Corr. Med. Servs.,

675 F.3d 650, 675 (7th Cir. 2012). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 654 (7th Cir. 2021); *see also* Gill v. City of Milwaukee, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage . . . a plaintiff pursuing [a *Monell*] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom.").

Hiccups and delays aren't surprising in a transition to a new medical provider. The complaint establishes that Mr. Taylor was given a prompt eye exam and glasses were ordered. These temporary delays due to transition backlogs are not of constitutional magnitude. Further, the delay in being seen for his eye infection cannot be attributed to a policy or practice of either company. Instead, medical staff made an independent decision that Mr. Taylor could wait his turn while they worked through the backlog of medical requests.

For these reasons, the court:

(1) DIRECTS the clerk to attach the exhibits ECF 2-1 and ECF 27-1 to the operative complaint (ECF 45);

(2) GRANTS Brent Taylor leave to proceed against Dr. Lewton in his individual capacity for compensatory and punitive damages for delaying treatment of Mr. Taylor's painful eye infection beginning in August 2021, in violation of the Eighth Amendment;

10

(3) GRANTS Brent Taylor leave to proceed against Dr. Lewton in his individual capacity for compensatory and punitive damages for delaying placing the order for glasses following the July 2021 eye exam in violation of the Eighth Amendment;

(4) GRANTS Brent Taylor leave to proceed against Deputy Warden Dawn Buss in her individual capacity for compensatory and punitive damages for threatening to remove him from his personal development class and reducing his time at the law library in retaliation for sending her a letter complaining of prison conditions on October 19, 2021, in violation of the First Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES Robert Carter, Ron Neal, Centurion Health, Wexford Health Services, and Jane Doe;

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dawn Buss at the Indiana Department of Correction, with a copy of this order, the prior screening order (ECF 24), and the complaint (ECF 30-1);

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Lewton at Centurion Health of Indiana, LLC, with a copy of this order, the prior screening order (ECF 24), and the complaint (ECF 30-1);

(9) ORDERS Centurion Health and Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), Dr. Lewton and Dawn Buss to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 14, 2022

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT