UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRENT TAYLOR,<br><br>      Plaintiff,<br><br>           v.<br><br>BUSS, et al.,<br><br>      Defendants. | CAUSE NO. 3:21-CV-852-PPS-MGG |

OPINION AND ORDER

Brent Taylor, a prisoner without a lawyer, filed a motion for leave to file an amended complaint (ECF 123), five months after the deadline to do so has passed (ECF 73). Although leave to amend should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave need not be given if "there is a good reason to do so: futility, undue delay, prejudice, or bad faith," *see R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 946 (7th Cir. 2020) (quotation marks omitted). A litigant must also comply with the deadlines in the court's scheduling order. The court's scheduling order can be altered only upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). Furthermore, when a request for an extension is filed after the deadline has passed, the movant must show excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). When considering whether there is excusable neglect, courts consider "all relevant circumstances," including "the danger of prejudice to the [nonmoving party], the length

of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1153 (7th Cir. 2021) (alteration in original) (quoting *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020) and *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)).

Taylor is currently proceeding on three claims: (1) "against Dr. Lewton in his individual capacity for compensatory and punitive damages for delaying treatment of Mr. Taylor's painful eye infection beginning in August 2021, in violation of the Eighth Amendment;" (2) "against Dr. Lewton in his individual capacity for compensatory and punitive damages for delaying placing the order for glasses following the July 2021 eye exam in violation of the Eighth Amendment;" and (3) "against Deputy Warden Dawn Buss in her individual capacity for compensatory and punitive damages for threatening to remove him from his personal development class and reducing his time at the law library in retaliation for sending her a letter complaining of prison conditions on October 19, 2021, in violation of the First Amendment[.]" ECF 50 at 10-11. The court denied him leave to proceed against Warden Ron Neal and Deputy Warden Dawn Buss for not intervening in his medical care after he wrote them letters about the difficulty he was having obtaining glasses and getting treatment for his eye infection. The court concluded those supervisors did not have the personal involvement necessary to be held liable for the medical care Taylor received. *Id.* at 5-7.

In his motion to amend his complaint, Taylor again seeks to hold Warden Neal and Deputy Warden Buss liable for the delay in receiving his glasses and in getting

treatment for his eye infection. ECF 123 at 3. He also seeks to add a new defendant, Health Services Administrator Sherri Fritter, who he says is also responsible for the delay. Taylor explains the motion to amend was filed after the deadline because he did not learn the information he needed to amend his complaint until the beginning of November 2023. ECF 123 at 3.

Regarding the claims Taylor wishes to add against the warden and deputy warden, he attaches a copy he obtained of their official job descriptions and relies on those to show that they had a responsibility to intervene in his medical care. ECF 123-2. Taylor does not say when or where he obtained these job descriptions; they were not included in the discovery produced in this case and contain a different Bates-stamp numbering system than the discovery here. *See* ECF 110. But, regardless, the information contained in the job descriptions is not new and does not change the analysis about the claims against the warden or deputy warden.

Taylor argues that the official job descriptions for the warden and deputy warden position establish that it is part of their job descriptions to ensure that offenders receive medical care, and that the warden in particular has a duty to ensure that prison policies are properly implemented. ECF 123 at 2. The court acknowledged in the screening order that supervisory officials can sometimes be held liable for not intervening in an inmate's medical care:

> To allow a claim to go forward against a supervisory official based only on letters and a failure to intervene, the plaintiff "has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

3

ECF 50 at 5-6. The court, though, concluded that, "As the head of the prison, Warden Neal could be expected to intervene in some types of medical issues a prisoner may have, but Mr. Taylor's allegations couldn't be said to be 'of the gravest nature.' *Antonelli [v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996)]." *Id.* at 7. Deputy Warden Buss' role in responding to inmate complaints was not made clear in the earlier complaint:

> Taylor says that she is the "acting deputy superintendent," ECF 45 at 6, which suggests that she might have some responsibility for actively managing day-to-day matters of the prison. But he doesn't say what specific duties she had as a "deputy superintendent," and later alleges that she "runs the law library," ECF 45 at 7, suggesting that her role at the prison doesn't encompass responding to inmate complaints.

*Id.* at 8. The deputy warden's job description does not provide any new information about her role in the prison that would give her supervisory authority over the provision of medical care; rather, her primary duties encompass overseeing the custody side of the prison's operation. *See* ECF 123-2 at 3-4. The deputy warden, thus, falls in the same category as the warden. She cannot ignore "an excessive risk to inmate health or safety," *Vance*, 97 F.3d at 993, but she can otherwise leave the provision of medical care to medical staff. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen."). Therefore, there is no new information concerning these defendants that would show good cause for allowing a late amendment to the complaint.

4

The allegations in the proposed amended complaint against Health Administrator Fritter, however, are based on newly acquired information. The discovery produced by Deputy Warden Buss on November 6, 2023, detailed Fritter's role in Taylor's efforts to obtain his glasses. ECF 110. But that same evidence also establishes that any claim against her is time-barred.

Taylor alleges in his proposed amended complaint that after more than a month and a half passed without receiving his glasses or being seen for his eye infection, he filed a formal grievance on August 30, 2021. ECF 123-1 at 17; ECF 2-1 at 1. He did not receive a response to that grievance before he filed suit (though later he received a much-belated response, which he provided to the court, *see* ECF 27-1). The discovery materials reveal the breakdown of the grievance process in Taylor's case. After the grievance was filed, the grievance specialist contacted Health Services Administrator Fritter on September 13, 2021, to investigate the medical issue. ECF 123-1 at 23; ECF 110-1 at 16 (email chain). The grievance specialist followed up with her on October 26, 2021, about the status of the investigation. *Id.* She did not respond to either. There was no further action on the grievance until November 8, 2021, when the Indiana Department of Correction Ombudsman became involved. *Id.* at 14-15. At that point, an email chain shows that new glasses were ordered on November 9, 2021, and Taylor received them sometime later. *Id.* at 14.

If Taylor could prove that Health Services Administrator Fritter acted with deliberate indifference, and not mere negligence, when she failed to respond to the grievance specialist's emails, then she might be liable under the Eighth Amendment. *See*

5

*Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) ("Deliberate indifference is more than negligence and approaches intentional wrongdoing." (quotation marks omitted)). However, Sherri Fritter has not previously been named as a defendant, and the proposed amended complaint adding her as a defendant was submitted for filing on November 17, 2023. ECF 123 at 4. The record shows that the last possible date when a claim against her accrued would have been on November 9, 2021, when new glasses were ordered.[1] So the proposed amended complaint was filed beyond the two-year statute of limitations applicable to claims under 42 U.S.C. § 1983. *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 894 (7th Cir. 2001).

Normally, "plaintiffs cannot, after the statute of limitations period, name as defendants individuals that were unidentified at the time of the original pleading." *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008). Under some circumstances, an amendment filed outside the statute of limitations may relate back to the date of the original complaint. *See* Fed. R. Civ. P. 15(c). When the proposed amendment seeks to add a new party, Rule 15(c)(1)(C) "permit[s] an amendment to relate back to the

---

[1] Taylor did not actually receive his glasses until a later date. The court considered whether the "continuing violation" doctrine would allow Taylor to claim the relevant date for statute of limitations purposes is when he actually received the glasses, with each day he did not have his glasses being "a fresh infliction of punishment that caused the statute of limitations to start running anew." *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013) (quoting *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)). But the continuing violation continues "as long as the defendants had the power to do something about his condition." *Id.* Here, the last date Fritter had the power to do anything about Taylor's need for glasses was November 9, 2021, when the glasses were ordered. *See Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 460 (7th Cir. 2020) (concluding prison doctor could not be held liable for delay in receiving contact lenses because the record showed that an off-site eye surgeon's office was responsible for the delay). Therefore, any constitutional violation as to her would have ended on November 9, 2021, starting the running of the statute of limitations.

original complaint only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *King v. One Unknown Federal Correctional Officer*, 201 F.3d 910, 914 (7th Cir. 2000). Not knowing a defendant's identity does not constitute a mistake for purposes of relation back. *See Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021) (reaffirming circuit precedent that suing a John Doe defendant is not a mistake that would allow relation back under Rule 15(c)(1)(C)). Therefore, relation back is inapplicable here.

Without relation back, Taylor can add a new defendant only if equitable tolling applies. The federal doctrine of equitable tolling provides that "a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so." *Heck v. Humphrey*, 997 F.2d 355, 357 (7th Cir. 1993) (quotation marks and citation omitted). "[I]t is the plaintiff's burden to show he diligently pursued the claim and some extraordinary circumstances prevented him from filing his complaint within the statute of limitations." *Herrera*, 8 F.4th at 499 (quotation marks omitted).

The record in this case shows that Taylor had sufficient time to discover Sherri Fritter's role in this case, if he had acted diligently. He initially filed this case in November 2021, before he even had his glasses. As of November 16, 2021, when he received the belated grievance response, he knew Sherri Fritter had some involvement in his case; the grievance stated, "I spoke with Mr. Hobbs and RN Fritter. Your glasses were ordered on 8-2-21, but they did not arrive at the facility. RN Fritter is looking into why your glasses did not arrive, and a new order was placed today, 11-9-21." ECF 21-1 at 1. Taylor was told in May 2022 that he needed to identify any unknown defendants in

7

order to bring a claim against them. ECF 24 at 5. And he was told in October 2022 that he could file an amended complaint if he learned the identity of an unknown defendant, but he was explicitly warned "to be mindful of the two-year statute of limitations that applies to his claims." ECF 50 at 5 n.1.

The record shows that Taylor did not pursue discovery diligently. Discovery officially opened on March 13, 2023. ECF 73. Taylor did not initiate any discovery for more than three months, until June 26, 2023, when he filed a motion for subpoena, seeking to subpoena his grievance records, medical records, emails, and other records related to his claim from Robert Carter, the Commissioner of the Indiana Department of Correction.[2] ECF 91. The court denied the motion for a subpoena, directing Taylor to request this information from a defendant before resorting to third-party discovery.[3] ECF 96. When the court issued this order, a month remained for Taylor to submit discovery requests to defendants. ECF 96. But he waited until the last possible day to submit his discovery requests (which, due to the delay inherent in mailing documents from prison were not received by the court and docketed until October 20, 2023). ECF 101, 102, 103. Defendant Buss received a short extension to respond and filed her response on November 6, 2023. ECF 110, 111.

---

[2] The court is mindful that Indiana State Prison was on lockdown from April 10, 2023 to approximately June 16, 2023, which limited Taylor's access to the law library. ECF 82, 90. This does not affect the analysis, as Taylor had a month to initiate discovery before the lockdown occurred and law library access is not necessary to draft discovery requests.

[3] It is unclear why Taylor resorted to a subpoena to receive this information instead of requesting it directly from the defendants. This is not his first lawsuit, and by the time discovery began in this case, he had made several discovery requests in his other case. *See Taylor v. Gladieux*, No. 1:20-cv-477-TLS-SLC (N.D. Ind. filed Dec. 18, 2020) at ECF 68, 82, 85, 87, 109, 149 (discovery requests by Taylor that were submitted before discovery deadlines were filed in this case).

This history shows that Taylor was not diligent in pursuing his claims against Sherri Fritter. Therefore, even if there were no problems with the statute of limitations, he has not shown good cause to file a late amended complaint. Finally, the excusable neglect factors do not favor Taylor. The summary judgment deadline is set for January 31, 2023, and adding a new defendant now will cause delay for the current defendants in receiving a resolution to this case and will require delay in the court's scheduling to allow for service of the new defendant, time for her to file an answer, and for any additional discovery to be conducted. Taylor provides no reason for his delay in filing an amended complaint, particularly when he knew Sherri Fritter had some involvement in his case soon after he filed it two years ago. There is no reason to find excusable neglect.

For these reasons, the court DENIES the motion (ECF 123) to amend the complaint.

SO ORDERED.

ENTERED: January 9, 2024.

       /s/   Philip P. Simon
       PHILIP P. SIMON, JUDGE
       UNITED STATES DISTRICT COURT