UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRENT TAYLOR, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-852-PPS-AZ |
| BUSS and DR. LEWTON, | |
| Defendants. | |

OPINION AND ORDER

Brent Taylor, a prisoner without a lawyer, is proceeding in this case on claims against three people in their individual capacity for compensatory and punitive damages: first there are claims against Dr. Dennis Lewton "for delaying treatment of Mr. Taylor's painful eye infection beginning in August 2021, in violation of the Eighth Amendment" ECF 50 at 10; then there are claims against Dr. Lewton "for delaying placing the order for glasses following the July 2021 eye exam in violation of the Eighth Amendment" *Id.* at 11; and finally, against Deputy Warden Dawn Buss "for threatening to remove him from his personal development class and reducing his time at the law library in retaliation for sending her a letter complaining of prison conditions on October 19, 2021, in violation of the First Amendment[.]" *Id.*

Both Dr. Lewton and Deputy Warden Buss seek summary judgment. ECF 154 and 179. Both motions are fully briefed and ripe for ruling. But before I dive into the summary judgement motions, there's a firehose of other motions that Taylor has

brought that I will deal with here at the outset. After defendants filed their summary judgment motions, Taylor filed a motion to amend his complaint. ECF 177. Because the deadline to amend pleadings expired nearly a year ago, this will be denied. ECF 73.

Taylor also filed a motion to compel additional discovery from Deputy Warden Buss, arguing she improperly stated she couldn't recall being involved in prior litigation. ECF 184. Court records show Buss has been involved in dozens of prior cases, but the issue is moot because these prior cases have no impact on the disposition of this case. Therefore, this motion will be denied as moot. Taylor filed a motion to strike various evidence and facts included in Buss' summary judgment motion. ECF 197. This motion will be denied, as the Local Rules require that "Disputes about the admissibility or materiality of evidence must be raised in the parties' briefs," and "[a] separate motion to strike must not be filed." N.D. Ind. L.R. 56-1(f). Additionally, Taylor filed motions to supplement his response to Buss' summary judgment motion. ECF 198, 199. Because the information contained in these motions does not affect the outcome of this case, these motions will be granted, and the information will be considered. Taylor also filed a motion requesting the court send him an electronic copy of his response to Dr. Lewton's summary judgment motion and to extend the deadline for his amended response. ECF 205. Because Taylor already has submitted his amended response to Dr. Lewton's summary judgment motion, this motion will be denied as moot. ECF 205. Taylor also filed motions for leave to file a sur-response to Deputy Warden Buss' summary judgment motion. ECF 212, 213. Because the court has reviewed the contents of Taylor's proposed sur-response and concludes it has no impact on the disposition of

this case, these motions will be granted and the sur-response will be considered. Additionally, Taylor filed a motion to dismiss Buss' summary judgment motion. ECF 215. Because the summary judgment motion is fully briefed and Taylor shows no good cause for "dismissing" the summary judgment motion, this motion will be denied. Lastly, Taylor filed a motion to strike Deputy Warden Buss' reply brief because it does not cite case law to support her legal arguments. ECF 217. While the lack of citation is relevant to the weight given to the arguments in the reply brief, this is not a basis for striking the brief, so this motion will be denied.

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a

prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be

4

> accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698 (quotation marks and citations omitted). Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

### I.     Eighth Amendment claims against Dr. Lewton

Taylor is proceeding against Dr. Lewton for violating his Eighth Amendment rights by (1) delaying placing the order for glasses following the July 2021 eye exam, and (2) delaying treatment of Taylor's painful eye infection beginning in August 2021. Each claim will be addressed in turn.

Regarding Taylor's claim that Dr. Lewton delayed placing the glasses order, Dr. Lewton states the following: he provides optometry services to patients at the Indiana State Prison ("ISP") as a contractor. ECF 154-1 at 1. On July 16, 2021, Taylor came to Dr.

5

Lewton for an optometric visit. *Id.* Dr. Lewton diagnosed Taylor with nearsightedness, but otherwise found he had good ocular health. *Id.* at 1-2. Dr. Lewton determined Taylor's eyeglass prescription so he could get eyeglasses. *Id.* at 2. Immediately after the appointment, Dr. Lewton gave the eyeglass prescription to the facility medical staffer, Sue Jones. *Id.* Dr. Lewton is not involved in ordering, procuring, or providing the prescription glasses to any inmate. *Id.* After he determines the eyeglass prescription, he provides that information to facility medical staff so they can order the prescription glasses. *Id.* Dr. Lewton was unaware that Taylor had any delay in receiving his prescribed eyeglasses until Taylor filed this lawsuit. *Id.* at 3. Taylor submitted an ISP grievance on August 30, 2021, complaining he was fitted for glasses over a month ago but still hadn't received his new pair of eyeglasses. ECF 110-1 at 12. The Grievance Specialist emailed ISP staff, and was informed by Mr. Hobbs and Nurse Fritter that the glasses had been ordered on August 2, 2021, but were not received for an unknown reason, and were reordered on November 9, 2021. *Id.* at 11, 14-16.

Thus, Dr. Lewton has provided evidence he wasn't personally involved in any delay in providing Taylor's eyeglasses. His only role was to give Taylor's prescription to ISP medical staff so they could order the glasses. In response, Taylor flatly states that Dr. Lewton *was* personally involved in the delay in providing his glasses, but he bases this argument only on mere speculation. Specifically, Taylor attests that (1) Dr. Lewton was the sole individual authorized to order glasses, (2) ISP does not employ "facility medical staffers" who are tasked with preparing and submitting orders for glasses, and (3) "Dr. Lewton did not provide Mrs. Jones with a glasses prescription for Mrs. Jones to

6

order me glasses during my July examination." ECF 207-1 at 5. But Taylor doesn't have personal knowledge to attest to this information. *See* Fed. R. Civ. P. 56(c)(4) (an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the [affiant] is competent to testify on the matters stated"); *Packer v. Trustees of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015) (rejecting facts asserted in affidavit where the affidavit does not provide foundation for affiant's personal knowledge of those facts). Taylor also attests that Sue Jones couldn't have ordered his eyeglasses because she is not a licensed medical professional (ECF 207-1 at 1-3), but this doesn't dispute Dr. Lewton's attestation that he provided the prescription to Sue Jones so the glasses could be ordered. Lastly, Taylor attests Sue Jones told him in September 2021 that Dr. Lewton would order the glasses (ECF 207-1 at 5), but this is inadmissible hearsay and Taylor offers no evidence from Sue Jones directly. *See* Fed. R. Civ. P. 56(c)(4); *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 n.3 (7th Cir. 2021) ("Inadmissible hearsay evidence may not be considered on summary judgment.").

Accordingly, the undisputed evidence shows Dr. Lewton provided Taylor's eyeglass prescription to ISP staff around July 16, 2021, ISP staff ordered the glasses on August 2, 2021, and ISP staff had to reorder the glasses on November 9, 2021. Because there's no evidence Dr. Lewton was responsible for any delay in providing Taylor his eyeglasses, no reasonable jury could conclude Dr. Lewton violated Taylor's Eight Amendment rights. *See Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 460 (7th Cir. 2020) (concluding doctor could not be held liable for delay in providing contact lenses

to inmate because the record showed a different party was responsible for the delay). Summary judgment is therefore warranted in favor of Dr. Lewton on this claim.

Regarding Taylor's claim that Dr. Lewton delayed treatment of his painful eye infection beginning in August 2021, Dr. Lewton attests he was unaware Taylor had an eye infection or irritation and did not review any grievances or requests for healthcare from Taylor regarding an eye infection. ECF 154-1 at 3. Specifically, Dr. Lewton said he only saw Taylor to prescribe eyeglasses on July 16, 2021, and saw him again for a follow-up visit to check his visual acuity with his new eyeglasses on March 18, 2022; Taylor never mentioned or showed any signs of an eye infection during either visit. *Id.* at 1-3. Dr. Lewton didn't speak with Taylor or review any grievances or healthcare requests from Taylor between July 16, 2021, and March 18, 2022. *Id.* at 3.

In response, Taylor argues Dr. Lewton was aware of his eye infection because he sent grievances and healthcare requests to Dr. Lewton around August 1, 2021, complaining of his eye injuries and the need for treatment. ECF 207-1 at 6; ECF 208 at 6. But there's no evidence Dr. Lewton ever received any grievance or healthcare request from Taylor. Specifically, the grievance records show Taylor's grievance was handled by ISP staff, not forwarded to Dr. Lewton. ECF 110-1 at 12-16. And there's no evidence ISP sent Taylor's healthcare requests to Dr. Lewton; recall that Dr. Lewton is a sub-contractor and not an ISP employee. *Id.* at 10.[1] Taylor argues he was informed by "Nurse Ella" and a woman named "Samantha" that Dr. Lewton had received his

---

[1] It's unclear how ISP handled Taylor's healthcare requests in this case (ECF 110-1 at 10), but there's no evidence ISP medical staff forwarded Taylor's healthcare requests to Dr. Lewton to determine how to handle the requests.

8

healthcare requests. ECF 207-1 at 6; ECF 208 at 6. But again, these statements are inadmissible hearsay. Taylor also argues he informed Dr. Lewton during the July 16, 2021, examination that he was experiencing an eye infection and eye pain. ECF 208 at 6. But this claim pre-dates the allegations in Taylor's complaint: that Dr. Lewton delayed "treatment of Mr. Taylor's painful eye infection *beginning in August 2021*[.]" ECF 50 at 10 (emphasis added). Specifically, Taylor alleged in his amended complaint that he began complaining of an eye infection in August 2021, and that he developed the eye infection *because* of the delay in receiving his eyeglasses after the July 16, 2021, examination. ECF 45 at 8-9. In short, any evidence he complained of an eye infection during the July 16 examination is not relevant to the allegations of the complaint. *See Bank of Ill. v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168-69 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions.").

Thus, because there is no evidence Dr. Lewton was ever aware Taylor was experiencing an eye infection or eye pain in August 2021, no reasonable jury could conclude Dr. Lewton violated Taylor's Eighth Amendment rights by delaying treatment for these conditions. Summary judgment is warranted in favor of Dr. Lewton on this claim.

## II.     First Amendment retaliation claim against Deputy Warden Buss

To prevail on a First Amendment retaliation claim, Taylor must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First

9

Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To satisfy the third element, Taylor must show, based on admissible evidence, "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotations omitted). Once Taylor makes this showing, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). If the defendant carries this burden, the plaintiff may still reach trial by showing that the defendant's reasons were merely pretextual. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009).

Taylor is proceeding against Deputy Warden Buss for retaliating against him for sending a letter complaining about prison conditions on October 19, 2021 ("October letter"), by (1) threatening to remove him from his personal development class, and (2) reducing his time at the law library. ECF 50 at 11. Regarding the first claim, Deputy Warden Buss attests to the following facts: as a Deputy Warden at ISP, Buss is the coordinator of the Peer Representative Program. ECF 179-1 at 1. In this role, she generally approves count letters for courses, fills out Classification Hearing reports placing or removing individuals from courses, completes evaluation forms, and supervises the facilitators of each course. *Id.* at 2. The Peer Representative Program courses are typically facilitated by fellow incarcerated individuals. *Id.* For example, the personal development course attended by Taylor was facilitated by inmate Matthew Thies. *Id.* Deputy Warden Buss supervises Course Facilitator Thies and other course

facilitators, but is not involved in the day-to-day management or facilitation of any particular course. *Id.* Deputy Warden Buss has no recollection or record of ever receiving Taylor's October letter, and has never "instructed, directed, or otherwise compelled" any individual, including Course Facilitator Thies, to remove or threatened to remove Taylor from any personal development course. *Id.* at 3-4.

In his response, Taylor argues he can prove that Deputy Warden Buss retaliated against him by offering testimony from Course Facilitator Thies, who will testify that Deputy Warden Buss instructed him to threaten to remove Taylor from the personal development course in retaliation for his October letter. ECF 195; ECF 213-3. But to survive summary judgment Taylor cannot merely speculate as to what the evidence should show, but rather must "marshal and present" that evidence to the court. *See Goodman*, 621 F.3d at 654. Taylor provides no testimony from Course Facilitator Thies, and instead only speculates as to what he'll testify at trial. Because there is no evidence in the record showing Deputy Warden Buss threatened to remove Taylor from the personal development course in retaliation for his October letter, summary judgment is warranted in favor of Deputy Warden Buss on this sub-claim.

Regarding Taylor's claim that Deputy Warden Buss retaliated against him by reducing his time at the law library, Buss attests to the following facts: in her role as the Deputy Warden, Buss oversees ISP's law library. ECF 179-1 at 1. However, Deputy Warden Buss is not involved in the day-to-day supervision or management of the law library, and instead delegates these duties to Law Library Supervisor Jerome Taylor, Correctional Coordinator Heather Stephens, and Administrator Assistant Angela

11

McGee. *Id.* at 2. Law Library Supervisor Taylor, Correctional Coordinator Stephens, and Administrator Assistant McGee are responsible for managing the day-to-day functioning of the Law Library including preparing library schedules, processing request slips, and preparing pass lists. *Id.* Deputy Warden Buss is not consulted about Law Library passes for individual inmates, and has no control over inmates' attendance at the Law Library. *Id.* at 3. Buss has never instructed, directed, or compelled any individual, including Law Library Supervisor Taylor, Correctional Coordinator Stephens, or Administrator Assistant McGee, to restrict or reduce Taylor's law library access. *Id.* at 4. The Law Library daily pass lists and other related documents show Taylor was only ever denied access to the Law Library when the Law Library was unavailable to all incarcerated individuals due to staffing shortages, COVID-19 related problems, holidays, cellhouse lockdowns, and other similar reasons. *Id.* at 5; ECF 110-5 at 70-104.

In his response, Taylor objects to the admissibility of the law library records. ECF 195; ECF 213-3 at 8-9. But the law library records need not be admissible to be considered at summary judgment. *See Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (A party can support a summary judgment motion "with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form") (citing Fed. R. Civ. P. 56(c)(2)). Specifically, because these records could be properly authenticated and admissible at trial as a business record, Rule 56(c)(2) allows the court to consider them at summary judgment. Regardless, even setting aside the law library records, Taylor doesn't provide any evidence disputing Deputy Warden Buss'

12

attestations that she was uninvolved in the day-to-day management of the Law Library and never instructed or compelled the Law Library Supervisor or any other person to restrict Taylor's law library access. ECF 195; ECF 213-3 at 8-9. Even assuming Taylor was restricted from the law library, there's no evidence any restriction was in any way related to Taylor's submission of the October letter to Buss. Because there's no evidence of any causal relationship between Taylor's submission of the October letter and his alleged restriction from the law library, summary judgment is also warranted in favor of Deputy Warden Buss on this sub-claim.

## Conclusion

For these reasons, the court:

(1) DENIES Taylor's motion to amend his complaint (ECF 177);

(2) DENIES AS MOOT Taylor's motion to compel discovery (ECF 184);

(3) DENIES Taylor's motion to strike evidence (ECF 197);

(4) GRANTS Taylor's motions to supplement his summary judgment responses (ECF 198, ECF 199);

(5) DENIES AS MOOT Taylor's motion for an extension (ECF 205);

(6) GRANTS Taylor's motion to file a sur-response (ECF 212, ECF 213);

(7) DENIES Taylor's motion to dismiss Deputy Warden Buss' summary judgment motion (ECF 215);

(8) DENIES Taylor's motion to strike Deputy Warden Buss' reply brief (ECF 217);

(9) GRANTS Dr. Lewton's motion for summary judgment (ECF 154);

(10) GRANTS Deputy Warden Buss' motion for summary judgment (ECF 179);

and

(11) DIRECTS the clerk to enter judgment in favor of Dr. Lewton and Deputy Warden Buss and against Brent Taylor and to close this case.

ENTERED: August 20, 2024.

    /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT